UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JUDITHANN KOONTZ,

                    Plaintiff,

                    v.

GREAT NECK UNION FREE SCHOOL DISTRICT
and THE BOARD OF EDUCATION OF THE
GREAT NECK UNION FREE SCHOOL DISTRICT,

                    Defendants.

----------------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
12-CV-2538 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Judithann Koontz, proceeding *pro se*, asserts claims for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"). (Dkt. 1.) Plaintiff alleges gender- and disability-based discrimination, unequal terms and conditions of employment, failure to accommodate her disability, and retaliation. (Dkt. 1 at 3.)

      Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth below, Defendants' motion is granted in its entirety, and Plaintiff's complaint is dismissed, with prejudice.

I.    <u>Failure to Comply with Local Rule 56.1</u>

      Plaintiff has not complied with Local Rule 56.1 ("Rule 56.1"). Rule 56.1 requires that the parties each submit a separate statement of material facts in connection with a motion for summary judgment. *See* Local Rule 56.1(a). Where a party opposing a motion for summary

judgment fails to controvert a fact properly set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. *United States v. Kadoch*, 96-CV-4720, 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment based on plaintiff's failure to submit a statement pursuant to Rule 56.1).

Ordinarily, the Court has discretion to overlook a party's failure to comply with local rules, in particular a *pro se* party's failure, and could choose instead to look to the underlying factual exhibits submitted by the parties, or grant the non-compliant party leave to submit a 56.1 Statement. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). However, the Court finds no good cause to do so here. There is no indication that Plaintiff has undertaken any effort to conduct meaningful discovery, such as depositions, and Plaintiff has submitted no documentary or testimonial evidence to the Court, other than her own affidavit and the largely inadmissible affidavit of a retiree of the defendant school district.[1] (*See* Dkt. 24.)

---

[1] The affidavit of Frank M. Rom (the "Rom Affidavit"), which was submitted by Plaintiff, is not based on personal knowledge, almost entirely consists of inadmissible hearsay, and lacks adequate foundation. Rom retired from the school district the year Plaintiff was hired. Although Rom states that he is "completely familiar with the facts set forth based on my experience and personal observations" (Dkt. 24 at ECF 17 ¶ 1), the facts set forth in his affidavit are based on "phone conversations" with others, and a meeting he attended regarding Plaintiff's supervisor, Mike Binda, and Binda's allegedly disrespectful attitude towards someone other than Plaintiff. (Dkt. 24 at ECF 17 ¶ 6.) To the very limited extent the Rom affidavit addresses Plaintiff's allegations, it provides merely a summary of evidence already available in the record and makes unsupported legal conclusions. In sum, the Rom Affidavit is at once unreliable, inapposite, and based on inadmissible hearsay, and deserves minimal weight. *See Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("Where a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' Fed. R. Civ. P. 56(e). '[H]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.'") (quoting *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986)).

This evidence is inadequate and in no way complies with Rule 56.1, nor provides the Court a basis to overlook Plaintiff's failure to comply with the rule.

Because Plaintiff has failed to conduct discovery in this action, allowing Plaintiff additional opportunity to submit a Rule 56.1 Statement would not be productive. Accordingly, because the Court finds no good cause for Plaintiff's failure to comply with Rule 56.1, it deems admitted all of the facts set forth in Defendant's 56.1 Statement ("St.") (Dkt. 23-27.)

## BACKGROUND

The following facts from Defendant's 56.1 Statement are relevant to the resolution of the present motion.

In 2002, Plaintiff was hired as a "cleaner" at the South Middle School in Great Neck, New York. (St. ¶ 4.) In January 2004, Plaintiff became a "cleaner-attendant," a position she held until her termination in July 2009. Plaintiff generally received good work evaluations at the beginning of her employment. (Dkt. 24 at ECF 5–16.)[2] However, following the initial period of positive evaluations from 2002 to 2004, beginning in approximately December 2004, Plaintiff's work evaluations became progressively worse. (Dkt. 24 at ECF 12–16.) As one example, Plaintiff's evaluation dated May 21, 2008, *inter alia*, stated that "[Plaintiff] needs to improve and have a better attitude to become a valuable employee." (Dkt. 24 at ECF 16.)

On March 6, 2009, Plaintiff's supervisor at Smith Middle School, Mike Binda, met with Jennifer Kirby, Defendants' Human Resources Administrator, to discuss Binda's complaints that Plaintiff had sexually harassed Binda. (St. ¶ 14.)[3] Binda complained that Plaintiff took a

---

[2] Citations to "ECF" reference the pagination of the Electronic Court Filing system, and not the document's internal pagination.

[3] Binda's complaints of Plaintiff's inappropriate behavior were not the first; other school district employees had previously made similar complaints about Plaintiff. (St. ¶¶ 16, 78.)

romantic interest in him, sent him inappropriate text messages, and approached him romantically, all despite Binda's requests that Plaintiff stop the behavior. (St. ¶¶ 17–18.) Subsequent to the meeting, on March 8, 2009, Binda filed a formal complaint of sexual harassment with the school district. (St. ¶ 15.)[4] In addition to Binda's complaints of sexual harassment, Binda also stated that Plaintiff refused to perform work within her job duties and was abusive to Binda, both physically and verbally. (St. ¶ 19.) Binda requested that Plaintiff be transferred from Smith Middle School because he became uncomfortable working with her and because she was not performing her work duties satisfactorily. (St. ¶ 20.)

In response to Binda's complaints, Kirby conducted an investigation. (St. ¶ 22.) As part of the investigation, Kirby interviewed Plaintiff, and discussed Binda's allegations against her. (St. ¶ 23.) Plaintiff admitted during the interview that most of Binda's allegations were true. (St. ¶¶ 23–25.) Specifically, Plaintiff admitted to questioning Binda's work-related directives and behaving insubordinately, yelling and using curse words directed at Binda, and flirting with Binda, although Plaintiff characterized the flirting as merely being friendly. (St. ¶ 25.) Notably, Plaintiff made no allegations of discrimination or harassment against Binda, and did not file a complaint of sexual harassment against him during the investigation. (St. ¶ 24.)

Also during the course of the investigation, Plaintiff stated that she had a "learning problem." (St. ¶ 87.) However, Plaintiff submitted no medical or other evidence to support her statement, and did not state that the problem interfered with her ability to perform her work or caused her to disregard instructions from her supervisors. (St. ¶ 35.)

In addition to Binda and Plaintiff, Kirby interviewed other employees who corroborated Binda's claims that Plaintiff was insubordinate, failed to complete tasks, and was disrespectful

---

[4] The precise details and the merits of Binda's allegations are unnecessary to the resolution of the instant motion.

4

toward Binda when he directed her to do work. (St. ¶¶ 36–38.) As a result of the investigation, Kirby found that Binda's complaints had been corroborated and recommended that Plaintiff be transferred to another school. (St. ¶¶ 42–45.)

Plaintiff was transferred from Smith Middle School to the North Senior High School in April 2009. (St. ¶¶ 13, 54.) Upon her transfer to the high school, Plaintiff worked under the direction of a new supervisor, Steve Challis. (St. ¶¶ 59, 61.) Plaintiff's performance and behavior did not improve. (*See, e.g.*, St. ¶ 60–69.) Due to Plaintiff's continued poor work performance, attendance issues, and behavioral problems, Plaintiff was terminated several months later at a July 21, 2009 meeting. (St. ¶¶ 88, 90.)

Subsequent to her termination, Plaintiff filed a complaint of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on January 7, 2010. (St. ¶ 103.) In response to the complaint, the EEOC conducted an investigation, which resulted in a finding that the EEOC could not corroborate Plaintiff's claims of discrimination. The EEOC issued Plaintiff a right-to-sue letter on March 22, 2012. (St. ¶¶ 108–09.)

*SUMMARY JUDGMENT STANDARD*

The standard for summary judgment is well established. Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Department*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute

of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), and "may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Lastly, the Court is mindful of its obligation to construe pro se pleadings and submissions "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

*DISCUSSION*

I. <u>Discrimination</u>

Plaintiff's discrimination claims under Title VII and the ADA are evaluated under the firmly established standard articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41–42 (2d Cir. 2000). Under the *McDonnell Douglas* burden-shifting framework, to defeat summary judgment a plaintiff must first establish a *prima facie* case of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509

U.S. 502, 506 (1993).  If the plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to proffer a legitimate, non-discriminatory justification for the adverse employment action taken against the plaintiff.  *Id.* at 506–07.  If the defendant provides a non-discriminatory justification, the *prima facie* "presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.* at 510–11.  Then, the sole remaining issue is "discrimination *vel non*," which the plaintiff must prove by a preponderance of the evidence and may rely on the same evidence as established in plaintiff's *prima facie* case or by establishing that defendant's proffered justification is mere pretext, and that the true reason for the adverse employment action was unlawful discrimination.  *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 402–03 (2d Cir. 1998); *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 273 (S.D.N.Y. 2013) ("In other words, the burden shifts back to the plaintiff to prove that 'discrimination was the real reason for the employment action.'") (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000)).

      a. <u>Prima Facie Case</u>

To establish a *prima facie* case, a plaintiff must establish four elements: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138) (2d Cir. 2008)).

As addressed below, the parties dispute whether Plaintiff qualifies as "disabled" under the ADA.  However, the parties do not dispute that, as a woman, Plaintiff belongs to a protected class with respect to her Title VII claims.  (Dkt. 1 at 3.)  The parties likewise do not dispute that

8

Plaintiff generally was qualified for the position she held. Accordingly, with the exception of Plaintiff's alleged disabled status, the Court only addresses the third and fourth elements of Plaintiff's *prima facie* case—whether she suffered an adverse employment action, and whether such an adverse action, if it occurred, permits an inference of discrimination.

### i. Adverse Employment Action

It is undisputed that Plaintiff's termination constituted an adverse employment action. (Dkt. 24 ¶ 15.) However, Defendants dispute that Plaintiff's transfer from Smith Middle School to North Senior High School did as well. The Court finds that Plaintiff has failed to set forth any basis to conclude that this transfer constituted an adverse employment action.

To constitute an adverse employment action, a plaintiff must endure "a materially adverse change in the terms and conditions of employment." *City of Syracuse*, 673 F.3d at 150. Examples that frequently constitute adverse employment actions include "termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). When a plaintiff alleges that a job transfer constitutes an adverse employment action, the plaintiff must show that the new work assignment was "materially less prestigious, materially less suited to his [or her] skills and expertise, or materially less conducive to career advancement." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000). However, "[c]hanges in assignments or duties that do not 'radical[ly] change' the nature of work are not typically adverse employment actions." *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 233 (E.D.N.Y. 2012) (citing *Galabya*, 202 F.3d at 641). A "'bruised ego,'" a "'demotion without change in pay, benefits,

duties, or prestige,'" or "'reassignment to [a] more inconvenient job'" all are insufficient to constitute a tangible or material adverse employment action." *Johnson v. Cnty. of Nassau*, 480 F. Supp. 2d 581, 595 (E.D.N.Y. 2007) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff states in her affidavit that her transfer from Smith Middle School to North Senior High School constituted an adverse employment action because her work duties at North Senior High School were "totally different." (Dkt. 24 ¶ 11.)[5] Plaintiff's statement is the only statement in support of her claim that the transfer constituted an adverse employment action. Plaintiff does not state how her duties were different, let alone does she claim that they constituted a demotion or diminishment in job responsibilities adequate to constitute an adverse employment action. Nor does Plaintiff submit any evidence to that effect. Indeed, Plaintiff testified at deposition that the hours of work and pay were the same at the high school as at the middle school. (St. ¶ 56.) Accordingly, there is no genuine dispute that Plaintiff's transfer did not constitute an adverse employment action.

Plaintiff ultimately was terminated, however. (Dkt. 24 ¶ 15.) There is no dispute that termination constitutes an adverse employment action, and, accordingly, Plaintiff has demonstrated that she sustained an adverse employment action with respect to her termination.

ii. Inference of Discrimination

Under the fourth prong of the *McDonnell Douglas prima facie* case inquiry, a plaintiff must submit sufficient evidence to establish that the adverse employment action occurred under circumstances giving rise to an inference that the actions were taken with intent to discriminate.

---

[5] The entirety of Plaintiff's statement is: "I was working at South Middle School from 2002. However, the duties at North Senior High School were totally different." (Dkt. 24 ¶ 11.)

*Holcomb*, 521 F.3d at 139. The Supreme Court has established that the burden to establish an inference of discrimination is "'minimal.'" *Id.* (citing *Hicks*, 509 U.S. at 506). Nevertheless, a plaintiff still must set forth admissible evidence to create the inference. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995).

1. Gender Discrimination[6]

First, with respect to being terminated based on her gender, Plaintiff's affidavit in no way references gender as a basis for discrimination. The only reference to gender in any of Plaintiff's submissions is the unsubstantiated assertion contained in the Rom Affidavit that "Mr. Binda had trouble dealing with women staff members and therefore was relieved of his duties at the Saddle Rock School and transferred to the South Middle School at a later date." (Dkt. 24 at ECF 18, ¶ 8.)[7] This assertion, even if admissible, in no way relates to Plaintiff's dismissal. Moreover, Binda is not the one who ultimately terminated Plaintiff. Accordingly, there is no genuine issue of fact as to whether Plaintiff was terminated based upon her gender. Defendants' motion for summary judgment with respect to Plaintiff's gender discrimination claim is granted.

2. Disability Discrimination

With respect to Plaintiff's disability as a basis for her termination, Plaintiff states in her affidavit the following:

> I was never requested to submit my medical documents regarding my disability, however, I did in fact repeatedly tell Mr. Binda I had a learning disability and his comment was "you are just making believe".

---

[6] Although Plaintiff at her deposition testified that she was not alleging gender discrimination in her termination (St. ¶ 102), because Plaintiff alleged it in the complaint (Dkt. 1 at 3), the Court addresses this claim.

[7] Plaintiff's complaint confusingly states that Defendants "also discriminated because I was on the same pay scale of male employees." (Dkt. 1 at 4.) This vague allegation, for which no factual support is offered, fails to raise a genuine issue of fact.

> I was working at South Middle School from 2002. However, the duties at North Senior High School were totally different. Ms. Kirby states in # 17 that I informed her of my disability.

(Dkt. 24 ¶¶ 9, 11.) Thus, the only identifiable disability from which Plaintiff allegedly suffers is an unspecified learning disability. Nowhere in Plaintiff's affidavit, nor in any documentary evidence, does Plaintiff set forth adequate evidence to establish that she qualified as disabled under the ADA at the time of her employment, that she gave adequate notice to her employer of her disability, that she requested a reasonable accommodation for her disability and that Defendants failed to provide her a reasonable accommodation, or that she was terminated on the basis of her purported disability. Indeed, to the contrary, Plaintiff states in her affidavit that she "did not need accommodations as [she] was given proper training and time to learn my assigned duties at South Middle School." (Dkt. 24 ¶ 2.) To the extent Plaintiff would argue that she did not need an accommodation at South Middle School, but needed one at North Senior High School, Plaintiff fails to explain how that could be so. Perhaps most fatal to Plaintiff's claim, however, is Plaintiff's failure to allege—or submit evidence permitting the Court to find that there is a genuine issue—that her purported disability limited a "substantial life activity." *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002) ("Merely having an impairment does not make one disabled for purposes of the ADA.")[8] In sum, Plaintiff has failed to raise a genuine issue of fact as to whether she was disabled under the ADA.

---

[8] To qualify for protection under the ADA, it must be established that "the plaintiff suffer[s] from [a] physical or mental impairment, and that the impairment "substantially limit[s] [a] major life activity" as defined by the ADA. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (internal citations and quotations omitted). Plaintiff has set forth no evidence that she suffers from a physical or mental impairment or that such impairment, if it exists, substantially limits a major life activity.

II.   Retaliation

Despite alleging retaliation in her complaint, Plaintiff's affidavit in opposition to summary judgment makes no reference to the basis for her retaliation claim, nor does it identify any evidence in connection with that claim. In Plaintiff's EEOC charge, Plaintiff alleged that she was transferred to the high school and then fired in retaliation for reporting sexual harassment by her supervisor, Binda. (Dkt. 1 at ECF 12.) Plaintiff has adduced no evidence that she ever reported harassment by Binda, and certainly has adduced no evidence permitting an inference that she was retaliated against for reporting harassment. Accordingly, there is no basis in the record to infer a retaliatory motive behind Plaintiff's transfer or termination.

In sum, Plaintiff has failed to establish the existence of any genuine issues of material fact that would support her Title VII, ADA, or retaliation claims.

*CONCLUSION*

For the reasons set forth above, Defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed in its entirety, with prejudice, and the Clerk of the Court is respectfully directed to terminate this matter.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: May 27, 2014
      Brooklyn, New York